# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v SHAMI

Docket No. 155273. Argued on application for leave to appeal January 11, 2018. Decided April 26, 2018.

Defendant Samer A. Shami was charged in the 19th District Court with violating the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*, for possessing, acquiring, transporting, or offering for sale tobacco products with an aggregate wholesale price of $250 or more as a manufacturer without a license in violation of MCL 205.423(1) and MCL 205.428(3). Defendant was the manager of Sam Molasses, a retail tobacco store owned by Sam Molasses, LLC. With the assistance of the Michigan State Police, officials from the Michigan Department of Treasury conducted an inspection of Sam Molasses on May 1, 2013. When the investigation revealed that the labels on several plastics tubs of tobacco in the store's inventory did not match those listed on the invoices from tobacco distributors, defendant explained that he had mixed two or more flavors of tobacco to create a new "special blend," which was then placed in the plastic tubs and relabeled. Defendant also explained that he repackaged bulk tobacco from a particular distributor by taking the packets of tobacco out of the boxes, inserting them into metal tins, and placing his own label on the tins, which were then sold at the store. Following a preliminary examination, the district court, Sam A. Salamey, J., bound defendant over to the Wayne Circuit Court for trial, ruling that there was probable cause to believe that defendant was a manufacturer of a tobacco product because, by blending different types of tobacco together, he had created a new and distinctive product. Defendant thereafter filed a motion to quash, which the circuit court, Alexis A. Glendening, J., granted after concluding that blending two types of tobacco does not constitute manufacturing under the TPTA. The Court of Appeals, GADOLA, P.J., and WILDER and METER, JJ., reversed and remanded, holding that defendant had manufactured or produced tobacco for purposes of the TPTA when he mixed different flavors of tobacco and repackaged tobacco in tins with his own label before offering it for sale. 318 Mich App 316 (2016). Defendant applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 1017 (2017).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Court of Appeals correctly held that an individual who combines two different tobacco products to create a blended product, relabels that new mixture, and makes it available

for sale to the public is a manufacturer of a tobacco product for purposes of the TPTA. Because there was sufficient evidence for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that defendant was a manufacturer under MCL 205.422(m)(*i*) because he produced a tobacco product, the district court did not abuse its discretion by binding him over for trial for alleged violations of MCL 205.423(1) and MCL 205.428(3). However, the Court of Appeals erred by concluding that merely repackaging bulk tobacco into smaller containers renders an individual a manufacturer under the TPTA. Accordingly, the judgment of the Court of Appeals was affirmed in part and reversed in part.

1. MCL 205.423(1) provides, in part, that a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer in this state unless licensed to do so. Under MCL 205.428(3), a person is guilty of a felony if he or she possesses, acquires, transports, or offers for sale contrary to the TPTA tobacco products other than cigarettes with an aggregate wholesale price of $250 or more. Taken together, these provisions subject a manufacturer of a tobacco product to criminal liability for possessing, acquiring, transporting, or selling a certain wholesale value of a tobacco product in this state without a license. The TPTA defines a "manufacturer" as a person who "manufactures or produces a tobacco product," but it does not define the terms "manufacture" or "produce." Accordingly, a person can become a manufacturer under the TPTA by either manufacturing or producing a tobacco product under the plain and ordinary meaning of those terms. Defendant's blending of tobacco products did not fall under the relevant dictionary definitions of "manufacture," which include "to make into a product suitable for use" and "to make from raw materials by hand or by machinery," because the unblended tobacco products were not raw materials and they were already suitable for use. However, considering the statutory context in which the term "produce" appeared, the relevant definition of that term was "to give being, form, or shape to." Because a person cannot give being, form, or shape to something that already existed in the same form or shape, the product produced must take a different form or shape than any of its constituent parts. Therefore, an individual "produces" a tobacco product when he or she combines two or more different tobaccos "to give being, form, or shape to" a single, custom tobacco blend that differs from the ingredient tobaccos. Consequently, that individual is a "manufacturer" of a tobacco product under MCL 205.422(m)(*i*), and he or she must have a license before purchasing, possessing, acquiring for resale, or selling a tobacco product under MCL 205.423(1).

2. There was sufficient evidence for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that defendant was a manufacturer under MCL 205.422(m)(*i*) because he produced a tobacco product. According to testimony at the preliminary examination, defendant admitted that he mixed two or more different tobaccos to create a new "special blend." He then relabeled that combination and made it available for sale to the public. Having produced a new tobacco product, defendant was required to be licensed as a manufacturer, and there was no dispute that defendant had no such license. Therefore, the district court did not abuse its discretion by binding defendant over for trial in the Wayne Circuit Court for alleged violations of MCL 205.423(1) and MCL 205.428(3). Because the Court of Appeals reached the same conclusion, albeit for different reasons, this portion of its judgment was affirmed.

3. The Court of Appeals erred by concluding that defendant's repackaging packets of tobacco into tins and relabeling it before offering it for sale amounted to the manufacturing of a new tobacco product. Taking packets of tobacco out of a box from a distributor and placing those packets into tins with new labels did not constitute the manufacture a tobacco product, because the tobacco product itself remained completely unaltered and was suitable for use before being placed in the tins. Defendant also did not produce a tobacco product by repackaging and relabeling the tobacco because, given that the tobacco product was completely unchanged after being placed in the tins, the repackaging and relabeling did not give being, form, or shape to a new tobacco product. In going beyond the dictionary definitions of "manufactures" and "produces," the Court of Appeals fashioned an overly expansive definition that encompassed conduct not supported by the plain and ordinary meaning of those words. That Court's definition also failed to appreciate that the focus of the inquiry should have been on the tobacco product itself, not the precise manner or mechanism in which that product was displayed or offered to the public. Accordingly, this portion of the Court of Appeals' judgment was reversed.

Court of Appeals judgment affirmed in part and reversed in part; case remanded to the Wayne Circuit Court for further proceedings.

Justice WILDER did not participate because he was on the Court of Appeals panel.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED April 26, 2018

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 155273

SAMER A. SHAMI,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except WILDER, J.)

ZAHRA, J.

The Tobacco Products Tax Act (TPTA)[1] requires a manufacturer of a tobacco product to be licensed with the Michigan Department of Treasury before purchasing, possessing, acquiring for resale, or selling that product in Michigan.[2] Criminal liability

---

[1] MCL 205.421 *et seq.*

[2] MCL 205.423(1).

may arise from the failure to comply with the licensing requirement.[3] The issue presented in this case is whether an individual who combines two different tobacco products to create a new blended product or repackages bulk tobacco into smaller containers with a new label is considered to be a manufacturer of a tobacco product and must have the requisite license.

The Court of Appeals held that, in either instance, such a person is a manufacturer. According to that Court, manufacturing simply requires a change from the original state of an object or material into a state that makes it more suitable for its intended use, and a person who changes either the form or delivery method of tobacco constitutes a manufacturer for purposes of the TPTA.

Although we agree with the Court of Appeals' conclusion that an individual combining two different tobacco products to create a blended product, relabeling that new mixture, and making it available for sale to the public is a manufacturer of a tobacco product, we disagree with the Court of Appeals that merely repackaging bulk tobacco into smaller containers renders an individual a manufacturer under the TPTA. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals. This case is remanded to the Wayne Circuit Court for further proceedings consistent with this opinion.

---

[3] See, e.g., MCL 205.428(3).

2

## I. FACTS AND PROCEEDINGS

Defendant Samer A. Shami managed the day-to-day operations of Sam Molasses, a hookah-tobacco retail store located in Dearborn, Michigan, which was owned by Sam Molasses, LLC. Although Sam Molasses, LLC, was licensed with the Michigan Department of Treasury as a secondary wholesaler[4] and an unclassified acquirer[5] of other tobacco products, it is undisputed that neither Sam Molasses, LLC, nor Shami was licensed as a manufacturer of tobacco products during the relevant time.

With the assistance of the Michigan State Police, treasury officials conducted an administrative tobacco tax inspection of Sam Molasses on May 1, 2013, during which Shami produced several invoices from various tobacco distributors. When Alisha Nordman, an employee of the treasury's Tobacco Tax Enforcement Unit, discovered that the labels on several plastics tubs of hookah tobacco in the store's inventory did not match those listed on the invoices, Shami informed Nordman that he had mixed two or

---

[4] See MCL 205.422(s) (defining "secondary wholesaler" as "a person who sells a tobacco product for resale, who purchases a tobacco product from a wholesaler or unclassified acquirer licensed under this act, and who maintains an established place of business in this state where a substantial portion of the business is the sale of tobacco products and related merchandise at wholesale, and where at all times a substantial stock of tobacco products and related merchandise is available to retailers for resale").

[5] See MCL 250.422(z) (defining "unclassified acquirer" as "a person, except a transportation company or a purchaser at retail from a retailer licensed under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, who imports or acquires a tobacco product from a source other than a wholesaler or secondary wholesaler licensed under this act for use, sale, or distribution," as well as "a person who receives cigars, noncigarette smoking tobacco, or smokeless tobacco directly from a manufacturer licensed under this act or from another source outside this state, which source is not licensed under this act").

3

more flavors of hookah tobacco to create a new "special blend," which was then placed in the plastic tubs and affixed with new labels to reflect the blended product. Michigan State Police Sergeant Stephanie Cleland also observed that labels on plastic tubs describing the flavor of hookah tobacco found inside did not correspond to invoices from the distributors.

Sergeant Cleland further questioned Shami about tobacco in the store's inventory that did not match the labels on certain containers. In response, Shami told her that he repackaged bulk hookah tobacco from a particular distributor by taking the clear packets of tobacco out of the boxes, inserting them into silver metal tins, and placing a "360" label on the tins. These tobacco-filled tins were then sold at the store.

Shami was subsequently charged with violating the TPTA by possessing, acquiring, transporting, or offering for sale tobacco products with an aggregate wholesale price of $250.00 or more as a manufacturer without a license in violation of MCL 205.423(1) and MCL 205.428(3).[6]

---

[6] Shami was also charged with violating the TPTA by possessing tobacco products without proper invoices in violation of MCL 205.426(1) and by filing false tobacco-tax returns in violation of MCL 205.427(2). The district court dismissed the tax-returns charge but bound Shami over on the improper-invoices charge. The circuit court subsequently granted Shami's motion to quash that charge. The Court of Appeals reversed the circuit court's decision, concluding that the district court did not abuse its discretion in binding Shami over on the improper-invoices charge. In its order scheduling oral argument on Shami's application for leave to appeal, this Court directed the parties to address only issues pertaining to the manufacturing charge. See *People v Shami*, 500 Mich 1017 (2017). Because we deny Shami's application for leave to appeal in all other respects, the relevant factual background and analysis in this Court's opinion are limited to the manufacturing charge.

4

Following a preliminary examination, the 19th District Court bound Shami over to the Wayne Circuit Court for trial, ruling that there was probable cause to believe that Shami was a manufacturer of a tobacco product insofar as he transformed "certain articles by blending those articles together to create a distinctive product or new character."[7] Shami thereafter filed a motion to quash, which the circuit court granted. According to the circuit court, "blending two types of hookah tobacco does not constitute manufacturing . . . ."[8] The Court of Appeals reversed, concluding that Shami was a manufacturer of tobacco products because he manufactured or produced tobacco for purposes of the TPTA when he mixed different flavors of tobacco and repackaged tobacco in tins with his own "360" label before offering it for sale.[9]

Shami applied for leave to appeal in this Court. This Court directed the Clerk to schedule oral argument on whether to grant the application or take other action.[10]

## II. STANDARD OF REVIEW

To bind a criminal defendant over for trial in the circuit court, the district court must find probable cause to believe that the defendant committed a felony,[11] which

---

[7] The district court expressed no opinion as to whether Shami was a manufacturer by repackaging hookah tobacco into tins.

[8] Like the district court, the circuit court expressed no opinion as to whether Shami was a manufacturer by repackaging hookah tobacco into tins.

[9] *People v Shami*, 318 Mich App 316, 329; 897 NW2d 761 (2016).

[10] *Shami*, 500 Mich 1017.

[11] See MCL 766.13 ("If the magistrate determines at the conclusion of the preliminary examination that a felony has been committed and that there is probable cause for charging the defendant with committing a felony, the magistrate shall forthwith bind the

requires sufficient evidence of each element of the crime charged, or from which the elements may be inferred,[12] to " 'cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' " of the defendant's guilt.[13]  This Court generally reviews a district court's bindover decision for an abuse of discretion.[14]  A district court abuses its discretion if its decision " 'falls outside the range of principled outcomes.' "[15]  Insofar as the district court based its ruling on questions of law, however, its ruling is reviewed de novo.[16]  Questions of statutory interpretation are similarly reviewed de novo.[17]

---

defendant to appear within 14 days for arraignment before the circuit court of that county, or the magistrate may conduct the circuit court arraignment as provided by court rule."); see also MCR 6.110(E) ("If, after considering the evidence, the court determines that probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it, the court must bind the defendant over for trial.").

[12] *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016), citing *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989).

[13] *People v Anderson*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 155172), slip op at 6, quoting *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003).

[14] *Seewald*, 499 Mich at 116, citing *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001).

[15] *Seewald*, 499 Mich at 116, quoting *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

[16] *People v Hall*, 499 Mich 446, 451-452; 884 NW2d 561 (2016), citing *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

[17] *Hall*, 499 Mich at 452, citing *UAW v Green*, 498 Mich 282, 286; 870 NW2d 867 (2015).

6

## III.  ANALYSIS

The Legislature enacted the TPTA in 1993 to, among other things, regulate and license manufacturers of tobacco products, as well as provide penalties for violations of the act.[18]  Relevant to the instant matter is MCL 205.423(1), which provides, in part, that "a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer . . . in this state unless licensed to do so."  And under MCL 205.428(3), a person is guilty of a felony if he or she "possesses, acquires, transports, or offers for sale contrary to this act . . . tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more . . . ."[19]  Taken together, these two statutory provisions subject a manufacturer of a tobacco product to criminal liability for possessing, acquiring, transporting, or selling a certain wholesale value of a tobacco product in this state without a license.  This, in turn, raises the principal question in this case: who is considered a manufacturer of a tobacco product?

The TPTA defines a "manufacturer" as a person who "manufactures or produces a tobacco product."[20]  Although the Legislature defines "tobacco product" as "cigarettes,

---

[18] 1993 PA 327.

[19] MCL 205.428(3) provides, in full, "A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes, tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more, 3,000 or more counterfeit cigarettes, 3,000 or more counterfeit cigarette papers, 3,000 or more gray market cigarettes, or 3,000 or more gray market cigarette papers is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both."

[20] MCL 205.422(m)(*i*).  The TPTA also defines a manufacturer as someone "who operates or who permits any other person to operate a cigarette making machine in this state for the purpose of producing, filling, rolling, dispensing, or otherwise generating cigarettes."  MCL 205.422(m)(*ii*).  Because the government is not alleging that Shami's

7

cigars, noncigarette smoking tobacco, or smokeless tobacco,"[21] it did not provide a definition for either "manufactures" or "produces."

When interpreting a statute, this Court's primary goal is to " 'ascertain the legislative intent that may reasonably be inferred from the words in [the] statute.' "[22] Because the language of a statute provides the most reliable manifestation of the Legislature's intent, this Court begins its interpretation by reviewing the words and phrases of the statute itself.[23] If a statutory word or phrase is not defined in the statute, it must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a legal term of art.[24] This Court has consistently consulted dictionary definitions to give words and phrases their plain and ordinary meaning.[25]

---

conduct involved a cigarette making machine, at stake in this case is only whether Shami manufactured or produced a tobacco product.

[21] MCL 205.422(w). "Noncigarette smoking tobacco" is defined as "tobacco sold in loose or bulk form that is intended for consumption by smoking and includes roll-your-own cigarette tobacco." MCL 205.422(n).

[22] *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 199; 895 NW2d 490 (2017), quoting *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

[23] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012), citing *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011).

[24] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014), citing *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013). Shami does not contend that either "manufactures" or "produces" is a legal term of art that must be construed in accordance with its peculiar and appropriate legal meaning.

[25] *Spectrum Health*, 492 Mich at 515.

A person can become a "manufacturer" under the TPTA by either "manufactur[ing]" or "produc[ing]" a tobacco product.[26] *Merriam-Webster's Collegiate Dictionary* provides several definitions for the verb form of "manufacture," including "to make into a product suitable for use" and "to make from raw materials by hand or by machinery."[27] We agree with Shami that these definitions do not describe the conduct charged here regarding Shami's blending of the tobacco products.[28] The unblended tobacco products were not raw materials, and they were already suitable for use.

But a person who "produces" a tobacco product is also a "manufacturer" under MCL 205.422(m)(*i*). *Merriam-Webster's Collegiate Dictionary* defines the verb form of "produce" in several different ways. Our selection of the proper definition must be guided by the statutory context in which the term appears.[29] Here, the term "produce" defines the statutory term "manufacturer," and thus the relevant definition is one that corresponds to "manufacturer." Only one definition reflects this context: "to give being,

---

[26] MCL 205.422(m)(*i*).

[27] *Merriam-Webster's Collegiate Dictionary* (11th ed).

[28] Shami contends that he is not a manufacturer of a tobacco product under the TPTA because the word "manufactures" necessarily requires a transformation of a raw material into a new and different article. Simply blending two identical products into a single product does not fall within the definition of manufacturing, says Shami, because the ingredients of the product have not changed and the final product remains essentially the same. Notably, Shami advances no argument regarding whether an individual "produces" a tobacco product under the TPTA by blending different tobacco products to create a new, custom blend.

[29] *Spectrum Health*, 492 Mich at 515 (" 'Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.' ") (citation omitted).

9

form, or shape to[.]"[30]   Because a person cannot give "being, form, or shape" to something that already existed in the same "form or shape," the product produced must take a different form or shape than any of its constituent parts.  Thus, an individual "produces" a tobacco product when he or she combines two or more different tobaccos "to give being, form, or shape to" a single, custom tobacco blend that differs from the ingredient tobaccos.  Consequently, that individual is a "manufacturer" of a tobacco product under MCL 205.422(m)(*i*), and he or she must have a license before purchasing, possessing, acquiring for resale, or selling a tobacco product under MCL 205.423(1).

In this case, there is sufficient evidence for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that Shami was a manufacturer under MCL 205.422(m)(*i*) because he produced a tobacco product.  According to Nordman's testimony at the preliminary examination, Shami admitted that he mixed two or more different hookah tobaccos to create a new "special blend."  He then relabeled that combination and made it available for sale to the public at Sam Molasses.  Having

---

[30] *Merriam-Webster's Collegiate Dictionary*, def 5b.   Another seemingly related definition provides that "produce" means "to cause to have existence or to happen," with "bring about" listed as a synonym.  *Id*., def 5a.  However, there are several other definitions for "produce" that do not seem to apply in this context.  See, e.g., *id*., def 4 (defining "produce" as "to make available for public exhibition or dissemination: as [(a):] to provide funding for . . . [or (b):] to oversee the making of" in the context of films or music albums).  Because the particular definition of "to give being, form, or shape to" is synonymous with "make" and, especially, "manufacture," we believe it is serves as the most appropriate definition for determining the plain and ordinary meaning of the word "produce" in the TPTA.  Of course, we must also strive to avoid rendering surplusage the statutory term "manufactures" in MCL 205.422(m)(*i*).  See *Seewald*, 499 Mich at 123.  But aside from the obvious differences in these definitions, the present case does not require us to address any further differentiation between the terms "manufactures" and "produces," and so we leave that task for another day.

produced a new tobacco product, Shami was required to be licensed as a manufacturer; there is no dispute that Shami had no such license. Therefore, the district court did not abuse its discretion in binding Shami over for trial in the Wayne Circuit Court for alleged violations of MCL 205.423(1) and MCL 205.428(3). Because it reached the same conclusion, albeit for different reasons, this portion of the Court of Appeals' judgment is affirmed.

Neither the district court nor the circuit court addressed whether Shami was a manufacturer because he had allegedly repackaged packets of bulk tobacco into tin containers. Nevertheless, the Court of Appeals opined that Shami was a manufacturer of a tobacco product on the basis of this conduct, too.

Given the same dictionary definitions of "manufacture" and "produce" discussed earlier, the Court of Appeals held that manufacturing "simply requires a change from the original state of an object or material to a state that makes it more suitable for its intended use."[31] Furthermore, given the context of the statute, including the provision concerning the use of a cigarette making machine, the Court of Appeals concluded that "any change in the form or delivery method of tobacco, rather than a specific type or method of change, constitutes manufacturing under the TPTA."[32] Thus, the Court of Appeals held that Shami's repackaging of tobacco into tins and labeling it "360" before offering it for sale amounted to the manufacturing of a new tobacco product.[33] We do not agree.

---

[31] *Shami*, 318 Mich App at 328.

[32] *Id*. at 329.

[33] *Id*.

11

By taking packets of hookah tobacco out of a box from a distributor and placing those packets into tins with new labels, Shami did not manufacture a tobacco product, because the tobacco product itself remained completely unaltered and was suitable for use before being placed in the tins. Nor did Shami produce a tobacco product, because he did not give being, form, or shape to a new tobacco product. Again, the tobacco product was completely unchanged after being placed in the tins.

In going beyond the dictionary definitions of "manufactures" and "produces," the Court of Appeals fashioned an overly expansive definition that encompasses conduct not supported by the plain and ordinary meaning of those words. That Court's definition also fails to appreciate that the focus of the inquiry is on the tobacco product itself, not the precise manner or mechanism in which that product is displayed or offered to the public. Accordingly, this portion of the Court of Appeals' judgment is reversed.[34]

---

[34] We address two final points. First, Shami argues that the TPTA is unconstitutionally vague because it does not provide fair notice of the conduct proscribed, thereby requiring an average person to guess at what activity falls within the scope of manufacturing tobacco. Because it was cursorily raised for the first time in his application for leave to appeal in this Court, Shami waived this argument. See, e.g., *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994) ("[T]he courts of this state have long recognized the importance of preserving issues for the purpose of appellate review. As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal . . . ."). Second, in the event we determine that his conduct falls within the definition of "manufacturer" under the TPTA, Shami argues that our decision should be applied prospectively rather than retroactively. We disagree. This Court's decisions are generally given full retroactive effect absent "exigent circumstances" that would justify the "extreme measure" of prospective-only application. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 400; 738 NW2d 664 (2007) (quotation marks and citation omitted); see also *Lincoln v Gen Motors Corp*, 461 Mich 483, 491; 607 NW2d 73 (2000) (" 'Complete prospective application has generally been limited to decisions which *overrule clear and uncontradicted case law*.' "), quoting *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986) (brackets omitted; emphasis

12

## IV. CONCLUSION

For the reasons stated in this opinion, the district court did not abuse its discretion by finding that there was probable cause that Shami unlawfully possessed, acquired, transported, or offered for sale tobacco products as a manufacturer without a license in violation of MCL 205.423(1) and MCL 205.428(3). Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals. This case is remanded to the Wayne Circuit Court for it to reinstate the bindover decision of the 19th District Court and for further proceedings consistent with this opinion. In all other respects, Shami's application for leave to appeal is denied because we are not persuaded that the questions should be reviewed by this Court. We do not retain jurisdiction.

Brian K. Zahra
Stephen J. Markman
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement

WILDER, J., did not participate because he was on the Court of Appeals panel.

---

added). Because this Court's present decision does not even satisfy the threshold criterion for prospective-only application—namely, that it "clearly establishes a new principle of law," *Trentadue*, 479 Mich at 401—and because this case does not present "exigent circumstances" of the sort warranting the "extreme measure" of prospective-only application, our decision has full retroactive effect.

13