*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

JOSE NINO,

      Defendant-Appellee.

UNPUBLISHED
November 21, 2019

No. 344364
Wayne Circuit Court
LC No. 17-001718-01-AR

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the circuit court's order affirming the district court's dismissal of a charge of manufacturing or delivering marijuana (less than five kilograms or fewer than 20 plants), MCL 333.7401(2)(d)(*iii*). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

At approximately 2:30 a.m. on January 20, 2017, defendant was driving his vehicle with three unidentified female passengers inside. Detroit Police Officer Benjamin Atkinson and his partner observed defendant drive through two red lights, switch lanes without a turn signal, and speed. The officers conducted a traffic stop, intending to arrest defendant for reckless driving. Defendant provided his license, registration, and proof of insurance, and the officers ordered him out of the vehicle while the passengers remained inside. The officers placed defendant in handcuffs and led him to the front of their vehicle, noting that defendant seemed nervous and fidgety and kept repeating, "I don't want any trouble."

_____

[1] *People v Nino*, unpublished order of the Court of Appeals, entered October 31, 2018 (Docket No. 344364).

-1-

Defendant's behavior made Officer Atkinson concerned for his safety and the safety of his partner, and one or both of the officers asked defendant if there was "anything in the vehicle that we should know about." Defendant admitted that there was marijuana in the vehicle. After securing the remaining passengers, the officers searched the vehicle and discovered a bag containing approximately 106 grams of marijuana, sandwich bags, and a scale. The officers arrested defendant for delivery or manufacture of a controlled substance and issued three citations for the traffic violations.

Following preliminary examination, the district court dismissed the controlled substance charge and declined to bind defendant over for trial, holding that the officers had violated defendant's rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), when they asked defendant if there was "anything" in the vehicle they should know about. Despite the prosecution's argument that the public-safety exception to *Miranda* applied, as the officers were objectively concerned for their safety, the district court held that the officers should have known the question was likely to elicit an incriminating response.

The prosecution appealed the district court's decision to the circuit court. The circuit court affirmed the district court's decision to dismiss the controlled substance charge, concluding that the officers' question was overly broad and intended as an investigatory inquiry rather than to dispel a specific safety concern. This appeal followed.[2]

## II. STANDARDS OF REVIEW

"A district court's decision to bind a defendant over for trial will not be disturbed absent an abuse of discretion." *People v Green*, 260 Mich App 710, 713; 680 NW2d 477 (2004). "A district court abuses its discretion if a decision 'falls outside the range of principled outcomes.' " *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018) (question marks and citation omitted). This Court reviews a circuit court's decision regarding whether the trial court abused its discretion in deciding whether to bind a defendant over for trial de novo. *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013). Likewise, questions of law are reviewed de novo. *People v Armisted*, 295 Mich App 32, 37; 811 NW2d 47 (2011). Finally, we also review constitutional issues and the application of the exclusionary rule de novo. *People v Campbell*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344078); slip op at 3, citing *People v Jones*, 260 Mich App 424, 427; 678 NW2d 627 (2004).

---

[2] We note that prior to granting leave, this Court remanded this case to the circuit court to "consider appointing appellate counsel for [defendant]." *People v Nino*, unpublished order of the Court of Appeals, entered July 10, 2018 (Docket No. 344364). Defendant did not request the appointment of appellate counsel, and was advised by this Court in a letter dated September 17, 2018 that he would be considered to be representing himself *in propria persona* in the absence of a request for appellate counsel. To date, defendant has not answered this appeal.

III. ANALYSIS

The prosecution argues that the district court abused its discretion by refusing to bind defendant over for trial on the manufacturing or delivering marijuana (less than five kilograms or fewer than 20 plants) charge. We agree.

In this case, there is no challenge to the validity of the initial traffic stop. An officer may temporarily detain a person to confirm or dispel an articulable reasonable suspicion that a criminal activity has recently been or is currently being committed, *Terry v Ohio*, 392 US 1, 30; 88 S Ct 1868; 20 L Ed 2d 889 (1968), even if the crime is a mere traffic violation, *Whren v US,* 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). Officers may also order the driver and passengers out of a lawfully detained vehicle without further evidence of a crime. *Maryland v Wilson*, 519 US 408, 415; 117 S Ct 882; 137 L Ed 2d 41 (1997); *Pennsylvania v Mimms*, 434 US 106, 110-111; 98 S Ct 330; 54 L Ed 2d 331 (1977). The officers in this case witnessed defendant commit a series of traffic violations, giving them probable cause to conduct a traffic stop. Therefore, the officers were lawfully able to order defendant out of the vehicle and, given that the totality of defendant's infractions led the officers to conclude that he was engaging in reckless driving, secure him in handcuffs. See MCL 764.15(1)(a) (providing that an officer may arrest a person without a warrant for a felony, misdemeanor, or ordinance violation committed in the officer's presence).

There is also no dispute that defendant was in possession of marijuana at the time of his arrest. Defendant told the officers about the marijuana and they found it in his vehicle. Using this evidence, a district court could reasonably find the existence of probable cause that defendant violated MCL 333.7401(2)(d)(*iii*) and bind him over for trial.[3] Thus, the issue this Court is asked to decide is whether defendant's statement that he was in possession of the marijuana, and the underlying physical evidence of the crime, are admissible.

Both the United States Constitution and Michigan Constitution guarantee the right against self-incrimination. US Const, Am V; Const 1963, art I, § 17. The United States Supreme Court in *Miranda* established further procedural safeguards to protect this right by prohibiting prosecutors from using statements obtained during the custodial interrogation of a suspect unless the suspect has first been informed of his or her rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). For *Miranda* protections to apply, the suspect must be in "custody" such that a defendant would "reasonably believe[] that he was not free to leave," *People v Mendez*, 225 Mich App 381, 382383; 571 NW2d 528 (1997), and must be subject to "interrogation" by "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

There is no dispute that defendant was "in custody" for the purposes of *Miranda*. Additionally, defendant was not provided *Miranda* warnings before the officers questioned him. Our Supreme Court has been clear that "[i]f [a] custodial interrogation is not preceded by an

---

[3] See MCL 766.13.

adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *People v Elliott*, 494 Mich App 292, 301; 833 NW2d 284 (2013). Therefore, any statements made by defendant would be inadmissible, absent some exception to the exclusionary rule. Indeed, the prosecution argues that officers' questioning of defendant falls under the public-safety exception to *Miranda*.

The public-safety exception to *Miranda* is well established in Michigan jurisprudence. To give officers flexibility to make quick, on-the-scene judgment calls, this exception allows officers to ask "objectively reasonable question[s] necessary to protect the police or the public from an immediate danger" without first advising suspects of their rights. *People v Attebury*, 463 Mich 662, 671-672; 624 NW2d 912 (2001). Such questions are not considered interrogations under *Miranda* as long as they are "necessary to secure [the officers'] safety or the safety of the public and [not] designed solely to elicit testimonial evidence from a suspect." *New York v Quarles*, 467 US 649, 658-659; 104 S Ct 2626; 81 L Ed 2d 550 (1984). Of course, officers acting in the line of duty cannot always craft their questions with such a singular intent. The Court in *Quarles* noted that an officer's motivations are often complex. "Undoubtedly most police officers . . . would act out of a host of different, instinctive, and largely unverifiable motives—their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect." *Id*. at 656. However, because officers often need to respond quickly "where spontaneity rather than adherence to a police manual is necessarily the order of the day," the Court held that "the availability of [the public-safety] exception does not depend upon the motivation of the individual officers involved." *Id*. at 656. Therefore, as long as officers "ask questions reasonably prompted by a concern for the public safety," the public-safety exception can still apply even when officers also intended to elicit incriminating evidence. *Id*.

In this case, we cannot conclude that the officers' question was necessary to secure the officers' safety or the safety of the public. The public-safety exception has historically been applied when officers had an articulable reason to believe the suspect was armed and dangerous. For example, in *Quarles*, officers detained a reportedly armed suspect accused of rape and found him wearing an empty shoulder holster. *Quarles*, 467 US at 651-652. The public-safety exception applied when the officers asked Quarles where the gun was, because although he was in handcuffs at the time of questioning, a lost firearm posed a significant threat to the public. *Id*. at 652, 657. Similarly, in *Attebury*, the defendant was reportedly armed, had threatened to shoot his wife, and had a history of mental illness. *Attebury*, 463 Mich at 664. The public-safety exception was triggered when officers asked " 'whether there were weapons in the home,' " because officers had an articulable suspicion that the defendant could access hidden weapons as he reached into drawers to retrieve clothing. *Id*. at 665-666, 673.

In contrast, the officers in this case had no articulable reason to believe that this particular defendant was potentially armed or dangerous. The officers conducted a traffic stop because they observed defendant violate traffic laws. The dark conditions, unsecured passengers, and defendant's nervous behavior could objectively make the officers generally concerned for their safety. However, the officers had no reason to suspect that defendant was armed or dangerous. In fact, there is nothing to suggest that defendant was not compliant with any of the officers' requests. When the officers conducted the stop, defendant provided a valid license, registration, and proof of insurance. No testimony was presented at the preliminary hearing to suggest that

the officers suspected that defendant was armed, and their question was not aimed to discover any weapons. Rather, the officers asked a vague, catch-all question, asking for "anything" they "should know about," which defendant reasonably understood to include drugs. The officers should have known that the question was just as likely to elicit incriminating evidence as it was to secure a threat. Therefore, it was not outside the range of reasoned and principled outcomes for the district court to conclude that defendant was subjected to a custodial interrogation prior to being advised of his rights under *Miranda*, and therefore, his responsive statement should be suppressed.

However, we conclude that the district court erred by dismissing the case for lack of evidence, because the marijuana and other paraphernalia seized in the resulting search were not subject to suppression. "Physical evidence obtained as a result of an unwarned statement remains admissible as long as the statement was voluntary." *Campbell*, ___ Mich App at ___; slip op at 9, citing *United States v Patane*, 542 US 630, 634, 637, 643-644; 124 S Ct 2620; L Ed 2d 667 (2004). Indeed, "[i]t is only the physical fruits of an actually coerced statement that must be suppressed to serve the deterrent purpose of the exclusionary rule." *Id*. (citation omitted). In this case, there is no evidence to suggest that the officers threatened, harassed, intimidated, or otherwise coerced defendant into admitting possession of marijuana: the statement was voluntary. See *Oregon v Elstad*, 470 US 298, 309; 105 S Ct 1285; 84 L Ed 2d 222 (1985). Moreover, the district court made no finding that defendant's statement was involuntary. Thus, the district court abused its discretion by suppressing the physical evidence and dismissing the manufacturing or delivering marijuana (less than five kilograms or fewer than 20 plants) charge against defendant.

## IV. CONCLUSION

We affirm the circuit court's order to the extent that defendant's unwarned statement is "subject to suppression[.]" However, we reverse the circuit court's suppression of the marijuana and drug paraphernalia, and we remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica