*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

DWAYNE FLANDERS,

       Defendant-Appellee.

UNPUBLISHED
November 22, 2022

No. 359586
Wayne Circuit Court
LC No. 21-004361-01-AR

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

The prosecution charged Dwayne Flanders with several counts arising from the shooting death of his lifelong friend, Cortez Golston—first-degree premeditated murder, discharge of a firearm at a dwelling causing death (deadly discharge), carrying a concealed weapon (CCW), and two counts of possession of a firearm during the commission of a felony (felony-firearm). Following the preliminary examination, the district court dismissed the case in its entirety and declined to bind over Flanders on any charge. The circuit court affirmed that ruling. The prosecution met its burden of establishing probable cause for a bind over. We reverse and remand to the district court for further proceedings.

## I. BACKGROUND

Early on the morning of February 13, 2021, Flanders learned that a friend had been killed that night. After hearing that the killer was at a house at 14311 Terry Street in the city of Detroit, a group of men decided to travel there either to exact retribution or to "get some answers." Flanders drove his Chevy Trailblazer to the scene with Cortez in his passenger seat and a man named "Vaughn" in the back. A second vehicle with an unspecified number of occupants joined them on this mission. Security footage from a house across the street from 14311 Terry Street shows two dark colored SUVs pull up in front of the house, although it is unclear which vehicle is Flanders' Chevy Trailblazer. One vehicle remained visible and the other remained outside of the camera's field of vision. The footage shows someone exit the passenger side of the vehicle in front of the house, and another person may have exited the driver's side. The sounds of several shots can be

heard and the flashes of many shots can be seen on the video. The sound of shots continue after the visible vehicle pulls away.

It is undisputed that Cortez was shot in the back of the head during these events. It is also undisputed that Flanders drove Cortez to the hospital and took him into the emergency room. Unfortunately, Cortez died from his injury. Flanders told an officer later in the day after the shooting that Cortez was struck by a bullet as the two men began to exit the vehicle. Flanders and Cortez had known each other their entire lives and Cortez's father, Steven Golson, viewed Flanders as a son. Steven asked Flanders about the shooting on several occasions. A few hours after the shooting, Flanders told Steven that Cortez was not armed and that "Rell" shot Cortez and then jumped into the backseat of the other vehicle. Flanders described to Steven that it "seem[ed] like they had planned it." On another occasion, Flanders told Steven that he fired several shots at the house before his gun jammed. In this version of events, Flanders continued to blame Rell for Cortez's shooting but claimed he thought "it was an accident." Flanders later told Steven that his gun was brand new and did not jam. Stevens eventually asked Flanders directly if he shot Cortez by accident. Flanders began crying and denied that he shot Cortez.

Investigating officers found the house at 14311 Terry Street riddled with bullet holes and uncovered many spent shell casings in the street. They also found Cortez's blood on the ground, partially covered by snow. When shown a picture of the house at 14311 Terry Street, Flanders denied that this was the site of the shooting; however, the evidence clearly shows that Flanders was incorrect. Further, location data in Flanders' cell phone placed him in the area of 14311 Terry Street around the time of the shooting.

The district court declined to bind over Flanders for trial and dismissed the charges against him. In doing so, the court stated:

> The Court understands the prosecutor's theory of the case to be that of transferred intent. That while Mr. Flanders arrived at that Terry Street location, he began to fire at a home with intent to kill, I guess, whoever was inside of that home and his inten[t] to kill is transferred to a person that the prosecution believes the evidence shows he shot, which was his friend.
>
> . . . I don't see the evidence in the way that the prosecution has presented the evidence.

After reviewing the video footage of the events on Terry Street, the court "agree[d] that someone was trying to kill someone," but the court "was not able to see someone get out of a driver's seat or someone get out of a passenger seat in order to conclude that [Flanders] shot his own friend in the manner that the prosecution described." Accordingly, the court concluded that the prosecution did not establish probable cause to believe that Flanders shot Cortez at all, let alone with the intent necessary for a first-degree premeditated murder charge. The court agreed to watch the video footage again at the prosecutor's request. Although the court then observed individuals exiting one of the vehicles, the court still could not discern which vehicle Flanders and Cortez were in or who fired the fatal shot.

The prosecutor appealed the district court order to the circuit court, which affirmed. In addition to claiming that Flanders' intent to kill a person inside 14311 Terry Street was transferred to Cortez, the prosecutor contended that there was probable cause to believe Flanders committed first-degree murder on an aiding and abetting theory. The circuit court made its own errors in ruling on the appeal, stating that there was no evidence that Flanders was even armed on the morning in question. The circuit court also reviewed the surveillance footage and agreed with the district court that nothing could be discerned about the circumstances of Cortez's shooting. "I don't think there's anything showing beyond mere presence that he was there and that he took his friend to the hospital." Connecting Flanders to Cortez's shooting would be mere "conjecture," the circuit court concluded.

We granted the prosecution's application for leave to appeal this decision. *People v Flanders*, unpublished order of the Court of Appeals, entered March 30, 2022 (Docket No. 359586).

## II. ANALYSIS

> At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial. *People v Shami*, 501 Mich 243, 250-251; 912 NW2d 526 (2018). To satisfy this burden, the prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred. *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016). [*People v Fairey*, 325 Mich App 645, 648-649; 928 NW2d 705 (2018).]

"Probable cause that the defendant has committed a crime is established by evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009).

A circuit court reviews for an abuse of discretion a district court's bindover decision. *People v Anderson*, 501 Mich 175, 189; 912 NW2d 503 (2018). We in turn make a de novo review of whether the district court abused its discretion in determining whether to bind over a defendant for trial; we "give[] no deference to the circuit court's decision." *Henderson*, 282 Mich App at 313. In doing so, we "review the evidence in the light most favorable to the prosecution." *Fairey*, 325 Mich App at 650.

The district court abused its discretion in declining to bind over Flanders. The district court further erred by failing to consider each charged offense and dismissing the complaint in its entirety based on a determination that there was no probable cause that Flanders committed first-degree premeditated murder.

To bind over a defendant on a CCW charge under MCL 750.227, the prosecution must present evidence that there was a firearm in a vehicle owned or operated by the defendant, that the defendant knew the weapon was present, and that the defendant was "carrying" it. *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). Steven testified that Flanders told him on more than one occasion that he was carrying a .9-millimeter pistol when he drove to 14311

Terry Street and that he fired his weapon at the house. While the identity of the shooters cannot be ascertained from the surveillance footage from Terry Street, it is clear that more than one individual was armed and firing. Given Flanders' statements to Steven, it can be reasonably inferred that Flanders was one of those armed individuals. This was sufficient to bind over Flanders on the CCW charge.

The charges of first-degree premeditated murder, deadly discharge, and felony-firearm are interconnected. To support a bindover for deadly discharge under MCL 750.234b(5), the prosecution must present evidence that the defendant "intentionally discharge[d] a firearm at a facility that he or she knows or has reason to believe is a dwelling or a potentially occupied structure" "in reckless disregard for the safety of any individual" and "cause[d] the death of another individual." See also MCL 750.234b(1)-(2). "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). And to bind over Flanders on the connected felony-firearm charges, the prosecution need only present evidence that Flanders possessed a firearm while committing deadly discharge and first-degree murder. MCL 750.227b.

The prosecution presented sufficient evidence to bind over Flanders on these charges under two theories: either that he was the person who shot Cortez or that he was an accomplice to the person who shot Cortez. Binding over Flanders as a principal requires relying on the doctrine of transferred intent. "Under the doctrine of transferred intent, where A aims at B, intending to kill him, but misses and hits C, killing her, A is held guilty of the murder of C." *People v Plummer*, 229 Mich App 293, 304 n 2; 581 NW2d 753 (1998). Therefore, if the person who shot Cortez intended to shoot someone else, that intent would be transferred for the purposes of fulfilling the first element.

To bind Flanders over as an aider and abettor, the prosecutor had to present evidence that

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (cleaned up).]

The prosecution presented sufficient evidence from which a person of ordinary prudence and caution would have probable cause to believe that Flanders acted with premeditation and deliberation. When Flanders learned that a friend had been killed earlier in the evening, he joined other friends to seek retribution or to "get some answers." Flanders told Steven that he brought a .9-millimeter pistol with him. Flanders drove to 14311 Terry Street taking navigation directions from his passengers and they met up with a second vehicle of like-minded friends along the way. When they reached 14311 Terry Street, Flanders exited his vehicle and fired several shots toward the house, as he described to Steven. It can be reasonably inferred from Flanders' actions that he travelled to the Terry Street house with the intent of seeking out his friend's murderer and doling out retribution.

A person of ordinary prudence and caution also would have probable cause to believe that Flanders either shot Cortez or aided and abetted the fatal shooting. Investigating officers found Cortez's blood outside in the snow, demonstrating that Cortez was shot outside the vehicle. Flanders described to Steven that he had exited the driver side of his vehicle and immediately started shooting. As Flanders pulled up to the curb with the passenger side of his vehicle facing the house, it can be inferred that Cortez stood between Flanders and his target. The evidence supports that Flanders intentionally shot at the house where he believed his friend's murderer was present. Flanders' intent to kill the alleged murderer was thereby transferred to the individual who was actually struck—Cortez.

Even if a bullet from one of the other individual's pistols struck and killed Cortez, there was probable cause to believe that Flanders aided and abetted the shooter. This was a concerted action by two carloads of armed individuals to shoot up a house occupied by their friend's killer. The group acted together, all firing weapons toward the house. It is reasonable to infer that Cortez was the victim of friendly fire in this battle. Given the joint effort with a common violent goal, each of the individuals in the group would be culpable in the shooting death of one of their own on an aiding and abetting theory.

Sufficient evidence similarly supported a probable cause finding on the deadly discharge count. Flanders travelled to 14311 Terry Street with a .9-millimeter pistol. He believed 14311 Terry Street was a dwelling occupied by his friends' killer. Flanders told Stevens that he fired his pistol at the house several times. And the evidence supporting the bindover on the first-degree murder charge satisfies the "causing death" element of the deadly discharge count.

The only additional element for the felony-firearm charges is that Flanders possessed a weapon while committing first-degree murder and deadly discharge. As already discussed, the prosecution presented sufficient evidence that Flanders possessed a .9-millimeter pistol to support a finding of probable cause on that element.

Given the record evidence, the district court abused its discretion in declining to bind over Flanders for trial. The factfinder may ultimately accept Flanders' defenses that he was not the person who shot Cortez and that whoever delivered the fatal shot did so by accident. But those issues create a credibility contest for trial and do not negate a finding of probable cause to bind over a defendant for trial. See *Anderson*, 501 Mich at 188 ("[I]n considering the credibility of witnesses, a magistrate may only decline to bind over a defendant if a witness's lack of credibility, when considered together with the other evidence presented during the examination, would preclude a person of ordinary prudence and caution from conscientiously entertaining a reasonable belief of the accused's guilt.") (cleaned up).

We reverse and remand to the district court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates