*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JM.

MIZUKA YASUOKA,

      Petitioner-Appellee,

v

JM,

      Respondent-Appellant.

UNPUBLISHED
February 17, 2026
9:48 AM

No. 375538
Washtenaw Probate Court
LC No. 25-000189-MI

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the probate court's order requiring respondent to undergo involuntary mental-health treatment. We reverse.

## I. BACKGROUND

Respondent moved from New Mexico to Michigan to join an unnamed spiritual or religious group. When she arrived in Michigan, she rented a car and began driving. While respondent was driving, she began to experience fear because of her phobias of bridges and water. She went to an emergency room hospital and voluntarily sought treatment because her mania, reduced sleep, and phobias were interfering with her ability to drive. A licensed professional counselor petitioned for involuntary mental-health treatment. The petition alleged that respondent was manic and that her phobias presented "a challenge." It further alleged that respondent was homeless and that respondent reported moving from New Mexico to Michigan for a "spiritual community group." A psychiatrist and physician filed reports with the petition that diagnosed respondent with mania and "bipolar disorder, current episode manic." These reports also stated that respondent was unable to attend to her basic physical needs and was unwilling to participate in the necessary treatment.

Dr. Tomi Rumano, a board-certified psychiatrist and respondent's treating doctor, testified at the hearing. Dr. Rumano diagnosed respondent with bipolar disorder with mania. In support of

this diagnosis, Dr. Rumano testified that respondent was hyperverbal, hyperreligious, and had congenital thought process (jumps from topic to topic). When asked whether respondent could reasonably be expected to injure herself because of her mental illness, Dr. Rumano testified that respondent could be reasonably expected to "probably" unintentionally injure herself because she was "unable to take care of herself" and could "be taken advantage [of] by others." No further explanation was offered. Dr. Rumano also testified that respondent "initially refused treatment" but then eventually agreed to take a lower level of lithium than recommended. However, respondent refused to take Abilify, an antipsychotic medication that Dr. Rumano believed was necessary to treat respondent's disorder. Dr. Rumano offered no testimony regarding whether respondent presented a substantial risk of significant harm to herself or others.

Respondent also testified. She agreed that she had bipolar disorder but disagreed with the recommended treatment for her disorder. Respondent testified that she wanted treatment but did not want it to be in inpatient treatment.

Following respondent's testimony, the probate court ruled that there was clear and convincing evidence that respondent was a "person requiring treatment" under MCL 330.1401(1)(c). The probate court specifically concluded that respondent's current medications were not sufficient because "her sleep was reduced and her phobias kept increasing," and respondent's "judgment was so impaired that she lacked the understanding of the need for the treatment that is currently being described," so respondent was unwilling to participate in the necessary treatment. The probate court also conclusively stated that respondent presented "a substantial risk of significant inadvertent physical or mental harm, primarily to herself, but also others."

The probate court then entered an order that committed respondent to combined hospitalization and assisted outpatient treatment for no more than 180 days, with the first 60 days in the hospital. This appeal followed.

## II. STANDARDS OF REVIEW

We review a probate court's dispositional rulings for abuse of discretion. *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 2. "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (cleaned up). When a probate court makes an error of law, it necessarily abuses its discretion. *Id*. We review the factual findings underlying a probate court's decision for clear error. *Id*. "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (cleaned up). Finally, we review issues of statutory interpretation de novo. *Id*.

## III. ANALYSIS

Respondent argues that petitioner failed to establish by clear and convincing evidence that she was a "person requiring treatment" under MCL 330.1401(1)(c). We agree.

A proceeding seeking an order of involuntary mental-health treatment is generally referred to as a civil-commitment proceeding. *In re Jestila*, 345 Mich App 353, 356; 5 NW3d 362 (2023).

"The Michigan Supreme Court has held that civil commitment statutes must be strictly complied with." *Id*. at 358.

In general, a probate court may properly order a respondent to undergo involuntary mental-health treatment when it finds by clear and convincing evidence that the respondent was a "person requiring treatment" under MCL 330.1401. *In re Londowski*, 340 Mich App 495, 504-505; 986 NW2d 659 (2022), citing MCL 330.1400(f), MCL 330.1468(2), and MCL 330.1465. "Evidence is clear and convincing when it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re MAT*, ___ Mich App at ___; slip op at 6 (cleaned up).

In the present case, respondent was found to be a "person requiring treatment" under MCL 330.1401(1)(c), which provides that the term includes:

> An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

A "mental illness" is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

Respondent does not dispute that she has a mental illness. Instead, respondent argues that petitioner failed to establish by clear and convincing evidence that she lacked an understanding of the need for treatment and that she presented a substantial risk of significant harm. We address each argument in turn.

The probate court found that respondent lacked the understanding of the need for recommended treatment and, therefore, was unwilling to participate in the necessary treatment. The statute states that "necessary treatment" is treatment that is based on a competent clinical opinion and needed to prevent relapse or harmful deterioration. MCL 330.1401(1)(c); see also MCL 330.1400(b). Respondent does not dispute that Dr. Rumano provided a competent clinical opinion; instead, she argues that Dr. Rumano did not explain why the recommended treatment was necessary to prevent a relapse. We disagree.

The record indicates that respondent went to the hospital because her mania, reduced sleep, and phobias were interfering with her ability to drive. Dr. Rumano testified that he had been respondent's treating doctor for over a week, and respondent continued to refuse the treatment necessary to address these symptoms. From these facts, the probate court determined that respondent's symptoms had increased and that her current medications were not sufficient; thus, the recommended treatment was necessary.

Respondent argues that she clearly understood the need for treatment, but she disagreed with the recommended treatment. Although respondent was willing to participate in some kind of treatment, there was a dispute whether respondent was willing to participate in the *necessary*

treatment. Dr. Rumano opined that respondent needed an increased dose of lithium as well as another medication, Abilify, to treat the symptoms of respondent's bipolar disorder. Dr. Rumano also explained that some inpatient treatment was necessary because of respondent's unwillingness to comply with the necessary treatment in the time leading up to the hearing.

MCL 330.1401(1)(c) clearly states that necessary treatment is determined "on the basis of competent clinical opinion[.]" The probate court accepted Dr. Rumano's recommendation and opinion of respondent's symptoms, rather than respondent's own understanding. We must defer to the probate court "on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Portus*, 325 Mich App at 397 (cleaned up). There was clear and convincing evidence to support the probate court's finding that respondent's mental illness impaired her judgment such that she failed to understand her need for the necessary treatment and was unwilling to participate in that treatment. See *In re Tchakarova*, 328 Mich App 172, 185-186; 936 NW2d 863 (2019).

Next, MCL 330.1401(1)(c) requires clear and convincing evidence that the individual "presents a *substantial* risk of *significant* physical or mental harm to the individual or others." (Emphasis added.) The primary goal of statutory interpretation "is to ascertain and give effect to the intent of the legislature." *In re Portus*, 325 Mich App at 381 (cleaned up). "The most reliable evidence of legislative intent is the plain language of the statute." *In re Moriconi*, 337 Mich App 515, 521; 977 NW2d 583 (2021). "Courts must give effect to every word, phrase, or clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *Mericka v Dep't of Community Health*, 283 Mich App 29, 38; 770 NW2d 24 (2009). Because the statute does not define "substantial" or "significant," we may consider the dictionary definitions to provide meaning. See *People v Shami*, 501 Mich 243, 253; 912 NW2d 526 (2018) (noting that courts consistently consult dictionary definitions "to give words and phrases their plain and ordinary meaning" if a word or phrase is not defined in the statute). "Substantial" is defined as "not imaginary or illusory" and "considerable in quantity" or "significantly great." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Significant" is defined as "probably caused by something other than mere chance" and "of a noticeably or measurably large amount." *Id*. The Legislature intentionally included these adjectives to describe "risk" and "harm"; therefore, we must give effect to their meaning.

In this case, respondent had no history of violence or altercations with others, and did not indicate inclinations toward self-harm. Further, there was no evidence that respondent's noncompliance with the recommended medical treatment would result in decompensation of her mental illness to the extent that there would be an increased risk of respondent developing harmful tendencies (e.g., drug abuse or suicidal thoughts or actions) or that there was a risk that respondent would develop additional harmful symptoms of her disorder.

The only potential harm that Dr. Rumano described was the probability that respondent could be taken advantage of by a spiritual group. Dr. Rumano's assertion was based simply on the fact that respondent moved from New Mexico to Michigan for this alleged spiritual group, and respondent refused to give details about this group. Dr. Rumano explained that these facts suggested a "high probability" of hyperreligiosity. Dr. Rumano testified that there was "a probability" that respondent could be taken advantage of by the spiritual group. But he did not

explain why this move harmed respondent or why this spiritual group could have posed a significantly greater risk of a measurably greater harm to respondent than any other spiritual group.

Dr. Rumano also testified that respondent could be expected to unintentionally injure herself because she could "probably not" take care of herself. Dr. Rumano simply referred to respondent's homelessness in support of this general assertion. However, he acknowledged that respondent's living situation was "something that's still to be determined." In other words, he did not have enough information to testify about whether respondent was able to attend to her own basic physical needs. Dr. Rumano did not explain why respondent's potential homelessness posed a significantly greater risk of measurably greater harm than any other person who was also homeless.

We emphasize that a respondent's significant liberty interests are at issue in an involuntary mental-health proceeding, which is why courts must "strictly comply" with the requirements in the statute. See *In re Jestila*, 345 Mich App at 358-359. MCL 330.1465 requires that a finding that an individual is a "person requiring treatment" must be established by clear and convincing evidence. Petitioner failed to establish by clear and convincing evidence that respondent presented a substantial risk of significant harm to herself or others. For these reasons, the probate court abused its discretion by involuntarily committing respondent under MCL 330.1401(1)(c).

Reversed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel