*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARRETT LEMICHAEL ATKINSON,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2023

No. 358713
Shiawassee Circuit Court
LC No. 2020-004811-FH

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

A jury found defendant, Garrett LeMichael Atkinson, guilty on four counts of third-degree criminal sexual conduct (CSC-III) involving penetration of a person under 16 years of age, MCL 750.520d(1)(a). The trial court departed upward from the sentencing guidelines range and ordered defendant to serve concurrent prison terms of 10 to 15 years. On appeal, defendant presents a host of objections to his convictions and sentences. He challenges the trial court's handling of his alibi defense and argues that his defense counsel was ineffective in that regard. Defendant also contends that the prosecutor made improper statements in closing arguments and that his defense counsel was ineffective for failing to object. In addition, defendant argues that his convictions were based on insufficient evidence. Defendant also contests his sentences, insisting that the trial court erred in scoring offense variables (OVs) 4 and 12 and in failing to justify its upward departure from the recommended guidelines range. We shall affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

Defendant's convictions arose from a sexual encounter he had with MK in July 2018. He was then 22 years old and MK was 15 years old. Defendant met MK on line in December of 2017, and they began regularly communicating. On July 30, 2018, MK was home alone for the weekend. She invited defendant to her home, and defendant accepted the invitation. Over the course of his 12-hour visit, defendant and MK engaged in several sexual acts.

Defendant was subsequently charged with four counts of CSC-III. Each charge related to a specific sexual act between defendant and MK on July 30, 2018. On August 4, 2021, defendant was found guilty by a jury on all four charges of CSC-III. On September 24, 2021, the trial court

-1-

sentenced defendant to four concurrent prison terms of 10 to 15 years, which was a departure from the sentencing guidelines range of 57 to 95 months' imprisonment. Defendant thereafter appealed his convictions and sentences, so we now must consider his challenges.

## II. LEGAL ANALYSIS

Defendant contests his convictions and sentences on five grounds. First, he asserts that the trial court mishandled his effort to offer an alibi defense. Second, he contends that the prosecutor committed misconduct in several forms during closing arguments. Third, he accuses his defense attorney of providing ineffective assistance in connection with both the presentation of the alibi defense and the prosecutor's closing arguments. Fourth, he insists that the record lacks sufficient evidence to support his convictions. Fifth, he contends that the trial court committed significant errors in imposing concurrent sentences of 10 to 15 years' imprisonment on the four counts of conviction. We shall address each of these five issues in turn.

### A. ALIBI DEFENSE

On Thursday, July 29, 2021, five days before trial was to begin, defendant filed a witness list that included members of his family who had never been disclosed to the prosecution. Defense counsel informed the prosecution that those witnesses would testify in support of defendant's alibi. The prosecution moved to strike all three of the proposed alibi witnesses because the witness list was untimely filed. More broadly, the prosecution also moved to bar defendant's presentation of an alibi defense because defendant had failed to file a notice of alibi. The trial court held a hearing on the prosecution's motion on Monday, August 2, 2021—the day before the trial started. Defense counsel acknowledged that the witness list was filed on "rather short notice" and conceded that he had not identified any good cause for the untimely filing. The trial court ruled that the prosecution "would be significantly prejudiced" if the late-disclosed witnesses were permitted to testify. The trial court noted that the witnesses were members of defendant's family, so they could have been disclosed much earlier in the case, yet the defense had furnished no reason for the tardy disclosure. The trial court concluded that defendant could testify about his alibi, but the other alibi witnesses were all precluded from testifying. The trial court also directed that the jury could not be told that alibi witnesses were excluded from the trial. Finally, the trial court ordered defendant to "provide a proffer of the intended alibi defense details no later than August 2, 2021 to the" prosecution.

The next day, the alibi issue arose again on the morning of trial. The prosecutor informed the trial court that the substance of defendant's proffered alibi had changed several times since the defendant had notified the prosecution of the alibi a few days earlier. According to the prosecutor, defense counsel initially advised the prosecutor that defendant was going to testify that he was at a wedding on July 30, 2018. The prosecutor stated that, the day before trial, defense counsel told him that defendant would testify that he was in Owosso shopping for clothing. According to the prosecutor, at 9:00 p.m. that same day, he received an e-mail from defense counsel explaining that defendant was planning to testify that he was having dinner with his mothers, then he went clothes shopping for his mothers' wedding, and then he went back to his mothers' house and stayed there until 3:00 a.m. Because of the continuing changes in the content of defendant's anticipated alibi testimony, the prosecutor requested that the trial court revisit its earlier decision and bar defendant from testifying about the alibi.

The trial court, in deciding how to proceed, noted that a potential remedy to this problem would be to permit the prosecutor to interview defendant's proffered alibi witnesses. But the trial court determined that if the prosecutor interviewed those witnesses, he would likely want to call them as witnesses, which would create an end-run "around the statute" that would enable defendant to present his alibi defense with supporting evidence, i.e., the testimony of relatives. The trial court chose to leave its original ruling intact—that defendant could testify about his alibi defense but he could not present any other evidence in support of that alibi and could not inform the jury that the trial court had barred other witnesses from testifying. The prosecutor asked the trial court whether he could ask defendant on cross-examination whether any witnesses would be testifying in support of his alibi. In response, the trial court stated that that would be "pretty good material for opening and closing."

The alibi issue came up yet again after jury selection. The trial court reiterated its decision that defendant could testify in support of his alibi, but he could not present evidence other than his own testimony to support his alibi. The trial court also ruled that the prosecutor would be allowed to question defendant about whether he had supporting evidence for his alibi aside from his own testimony, and that defendant was not allowed to testify that the reason for his lack of supporting witnesses or evidence was because it was excluded by the trial court.

At trial, MK testified about her online relationship with defendant and the sexual encounter that took place on July 30, 2018. MK told the jury that she met defendant when she was 14 years old and that defendant knew MK's age. MK testified that she and defendant would communicate via video chat on a daily basis and she considered defendant to be her best friend. On MK's 15th birthday, defendant sent her a picture of his penis. MK also sent pictures of herself to defendant at his request, although it was unclear whether those pictures were of a sexual nature. On July 30, 2018, MK invited defendant to her house in Owosso, and defendant arrived at approximately 3:00 p.m. that day. After defendant and MK smoked marijuana that defendant brought, the two engaged in a number of sexual acts including oral sex and vaginal intercourse. Defendant left MK's house at approximately 3:00 a.m. A police officer testified that he obtained defendant's phone records and that there was a break in contact between defendant and MK from 1:44 p.m. on July 30, 2018, until 3:14 a.m. on July 31, 2018. Moreover, cell-site analysis revealed that defendant's cell phone used an Owosso-area tower on July 31, 2018, at 3:27 a.m. even though, in July and August 2018, defendant's cell phone ordinarily was used in the Mount Pleasant area, where defendant lived at that time.

Defendant testified at trial and acknowledged that he knew MK and spoke to her frequently. Defendant admitted that he was in the Owosso area on July 30, 2018. He explained that he arrived in the area at about 3:00 p.m. and went to his mothers' house. He ate dinner there with his family at about 4:30 p.m. and then spent time with his family. At about 6:30 p.m. or 7:00 p.m., defendant and other unspecified people went to his grandparents' house and then back to his mothers' house. At about 8:00 p.m., defendant, along with his step-brother, Dennis, and others, went to a store to shop for clothes for the upcoming wedding of defendant's mother and stepmother. After about an hour at the store, they returned to defendant's mothers' house, where defendant and Dennis then watched movies and played music. Both men fell asleep while watching movies and woke up at about 3:00 a.m., when they both went to their own respective homes. Defendant denied ever being at MK's house. On cross-examination, the prosecutor questioned defendant about whether other witnesses would testify in support of his alibi. Defendant said that no other witnesses would testify

in support of his alibi. The prosecutor also asked defendant whether he would be presenting other evidence in support of his alibi, and defendant stated that he would not.

On appeal, defendant asserts that the trial court erred when it precluded his alibi witnesses from testifying and when it prevented the jury from hearing that alibi witnesses had been excluded. Additionally, defendant insists that the trial court demonstrated bias or a misunderstanding of the law when it "strategized" with the prosecution. Each of these arguments requires analysis.

## 1. PRECLUSION OF ALIBI WITNESSES

Defendant argues that the trial court erred by excluding the testimony of his proffered alibi witnesses. Under MCL 768.21(1), the trial court has discretion to exclude testimony as a sanction for violating the notice-of-alibi-defense statute, MCL 768.20. See *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993). According to MCL 768.20(1), a defendant must provide "notice in writing" to the prosecution "not less than 10 days before the trial of the case" of the defendant's "intention to claim th[e] defense" of alibi. We should uphold the trial court's decision in handling an alibi issue unless the trial court abused its discretion. An abuse of discretion occurs if a decision falls outside the range of principled outcomes. *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018).

The notice-of-alibi-defense statute, MCL 768.20(1), requires the defendant to identify "the names of witnesses to be called in behalf of the defendant to establish that defense," at least to the extent the defendant or the defense attorney knows that information. The written notice also "shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense." *Id*. The purposes of the statute are to prevent the introduction of a surprise alibi witness and to provide the prosecution time to investigate any alleged alibi. *Travis*, 443 Mich at 675-676. Those purposes are served by MCL 768.21(1), which defines the appropriate sanction for failure to file a timely notice of alibi as exclusion of "evidence offered by the defendant for the purpose of establishing an alibi[.]"

Defendant did not disclose his alibi witnesses in a written witness list until five days before trial, and defendant's formal notice of alibi was not filed until the day before trial. Defense counsel acknowledged that no good cause existed for the delay in listing the proposed alibi witnesses, who were relatives of defendant. Accordingly, MCL 768.21(1) manifestly authorized the trial court to exclude defendant's alibi witnesses because defendant failed to satisfy the notice requirement set forth in MCL 768.20(1). Nevertheless, the trial court was concerned about defendant's ability to present a defense, so the trial court permitted defendant to testify about his alibi. Additionally, the trial court gave an alibi instruction to the jury. Defendant correctly notes that the exclusion of the alibi witnesses put him in an unenviable position, but it was his failure to timely file his notice of alibi—not the trial court's application of the controlling statutes—that was the cause of defendant's predicament. Under the circumstances that it faced, the trial court did not abuse its discretion when it excluded the alibi witnesses.

Defendant further contends that even if the trial court properly excluded the alibi witnesses, the trial court should have allowed him to inform the jury that the trial court had excluded his alibi witnesses. Defendant, however, waived that issue. In response to the trial court's ruling, defense counsel agreed with the decision that the jury should not be informed that the trial court excluded

certain witnesses from testifying. By agreeing with the trial court's ruling, defendant waived that issue and extinguished any error in connection with it. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

## 2. JUDICIAL BIAS

Defendant next argues that the trial court exhibited "extreme bias or a misunderstanding of the law," and thereby abused its discretion, by not only excluding defendant's alibi witnesses, but also by expressing concern that affording the prosecution time to interview alibi witnesses would enable defendant's proffered alibi witnesses to testify in an end-run "around the statute." Because defendant did not present this issue in the trial court, the issue is unpreserved. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). We review unpreserved issues for plain error affecting defendant's substantial rights. *Id.*; *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763.

"A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias." *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018). "A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is so egregious that it pierces the veil of impartiality." *Id.* (quotation marks omitted). And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v US*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Indeed, judicial comments and rulings do not furnish "a basis for disqualification 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Cain v Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996).

Defendant asserts that the trial court exhibited bias against him because of its decision to exclude his alibi witnesses and its lack of concern for his due-process rights. As we already stated, the trial court had the authority to restrict the evidence defendant presented in support of his alibi defense because of his late disclosure of his notice of alibi and his alibi witnesses. The trial court's decision reflects a straightforward application of Michigan law, not any deep-seated favoritism or antagonism. See *id.* Under the circumstances, defendant has not overcome the heavy presumption of judicial impartiality, see *Willis*, 322 Mich App at 588, and he certainly has not established any entitlement to relief under the plain-error doctrine.[1] See *Carines*, 460 Mich at 763.

---

[1] In the Issue Presented section, defendant states that the trial court committed judicial misconduct by "coaching" the prosecutor. Defendant has not offered any argument whatsoever to support that contention, so defendant has abandoned that issue on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

## B. PROSECUTORIAL MISCONDUCT

Defendant's next major issue involves prosecutorial misconduct. Specifically, defendant accuses the prosecutor of making three improper comments in his closing and rebuttal arguments. But because defendant did not object to the comments at trial or request a curative instruction, we review this issue only for plain error that affected defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010); *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). An error at trial affected substantial rights only if it "affected the outcome of the proceedings." *Carines*, 460 Mich at 763.

Defendant insists that the prosecutor erred in arguing to the jury that the reason defendant did not give a notice of alibi to the prosecutor until the night before trial was "because he's guilty." Defendant also faults the prosecutor for failing to inform the jury of "the real reason that the notice of alibi was untimely" and that the trial court had barred defendant from presenting other witnesses to substantiate his alibi defense. We regard defendant's positions as untenable on the existing trial record. Defendant does not identify "the real reason" for the untimely submission of the notice of alibi and the list of alibi witnesses, nor is any such reason apparent in the trial-court record. From the record, we only know that defendant first informed the prosecutor of his alibi in the final days before the trial and then modified his alibi at least twice in short order. That leads to the inference that defendant created his alibi at the last moment in an effort to avoid conviction. The prosecution need not simply argue the evidence; it may also argue all reasonable inferences arising from that evidence. See *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Defendant criticizes the prosecution for failing to explain to the jury that the trial court had prohibited defendant from presenting alibi witnesses, but the trial court had instructed both parties that they could not tell the jury that alibi witnesses had been barred. The prosecutor did not err by following that instruction from the trial court.

Similarly, defendant claims that the prosecutor committed misconduct on rebuttal when he characterized defendant's alibi as simply "a story [defendant] made [ ] up on the night before trial." Defendant appears to argue that this was a fact that was not in evidence. During the trial, defendant testified that he did not file his alibi notice until the day before trial. Defendant also testified that he had not told police that he was in Owosso in or around July 30, and did not mention this fact to anyone until sometime later. Defendant also testified that he had recently learned that cell phone data had placed him in Owosso. Again, the prosecutor's statement is a reasonable inference from the facts. See *Dobek*, 274 Mich App at 66. The prosecutor's theory was that MK was telling the truth, which necessarily meant that defendant's alibi was entirely fabricated. The prosecutor was not required to phrase his argument in "the blandest possible terms." *Id.* In sum, the prosecution properly handled the alibi issues in his arguments.

Finally, defendant contends that the prosecutor erred when he vouched for MK's credibility by arguing that MK "was telling you the truth." A prosecutor improperly vouches for a witness if the prosecutor implies that he or she has special knowledge of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "A prosecutor may, however, argue from the facts that a witness is credible[.]" *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Moreover, a prosecutor may comment on his or her "own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. Here, the

prosecutor's statements about MK's credibility did not imply that the prosecutor had any special knowledge that MK was testifying truthfully. *Id.* Instead, the prosecutor argued that because MK was unaware that phone records supported her version of events when the police first interviewed her, she was credible. See *Howard*, 226 Mich App at 548. Defendant and MK offered two entirely different versions of the events that occurred on July 30, so defendant's guilt depended largely on whose testimony the jury believed. Thus, it was appropriate for the prosecutor to offer comments on MK's credibility during closing argument. See *Thomas*, 260 Mich App at 455. Likewise, the prosecutor was entitled to assert that defendant was unworthy of belief because the prosecutor did so by arguing from the facts. *Howard*, 226 Mich App at 548. In sum, the prosecutor's comments during closing argument and rebuttal fell well within the bounds of permissible argument, so those comments cannot possibly be regarded as plain error.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant insists that defense counsel rendered ineffective assistance by failing to adhere to the alibi-notice and witness-disclosure requirements of MCL 768.20(1) and by failing to request a continuance to allow the prosecutor time to interview the alibi witnesses who were present in the courtroom.[2] Defendant also argues that defense counsel rendered ineffective assistance by failing to object to the prosecutor's comments in closing and rebuttal arguments. Beyond that, defendant seeks a remand to the trial court for an evidentiary hearing on his claims of ineffective assistance of counsel. None of defendant's arguments warrants relief.

Whether defendant is entitled to a new trial based upon ineffective assistance of counsel is a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012). We review the trial court's findings of fact for clear error, but we review questions of law de novo. *Id.* If no evidentiary hearing took place in the trial court, our review is limited to mistakes that are apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). To support his claims of ineffective assistance of counsel, defendant must establish (1) his defense attorney's representation of him fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 674 (1984). Defense counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; see also *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defense attorney's conduct does not fall below an objective standard of reasonableness if the court can conceive of a legitimate strategic reason for that conduct. *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019).

---

[2] In the Issue Presented section of his brief, defendant contends that defense counsel was also ineffective for failing to ask defendant why he did not have corroborating witnesses. To the extent defendant asserts that defense counsel should have asked him about that matter during his direct examination of defendant, that argument is clearly meritless. The trial court explicitly instructed both parties that the jury could not be told that the testimony of other alibi witnesses had been excluded. Defense counsel was not ineffective for following the trial court's ruling. Furthermore, defendant abandoned this issue by raising it in his Issue Presented and then failing to provide any analysis of this issue. See *Mitcham*, 355 Mich at 203.

Defense counsel is never required to advocate for a meritless position. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Defendant argues that his attorney was ineffective for failing to file a timely notice of alibi defense, including a list of his alibi witnesses, and for failing to request a continuance to afford the prosecution time to investigate defendant's alibi witnesses. "Where there is a claim that counsel was ineffective for failing to raise a defense, the defendant must show that he made a good-faith effort to avail himself of the right to present a particular defense[.]" *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). Defendant simply asserts that the failure to file a timely notice of alibi constituted ineffective assistance. He offers no evidence that he made a good-faith effort to avail himself of the right to present an alibi defense. See *id*. Moreover, the evidence in the trial-court record does not support that conclusion. Defense counsel told the trial court that defendant notified him on July 29, 2021, that he wanted to have the alibi witnesses testify at trial. There is no evidence to suggest that the untimely filing of the alibi notice was attributable to a failure by defense counsel. Thus, it is not "apparent on the record" that defense counsel's performance fell below an objective standard of reasonableness when he filed a list of alibi witnesses and a notice of alibi shortly before the trial was set to begin. See *Abcumby-Blair*, 335 Mich App at 227.

Beyond that, defendant has not demonstrated that defense counsel was ineffective in failing to obtain a continuance to afford the prosecutor time to interview defendant's alibi witnesses. The trial court considered, but ultimately rejected, an adjournment to allow the prosecutor to interview the alibi witnesses. Thus, defense counsel's performance did not fall below an objective standard of reasonableness for not requesting an adjournment that the trial court had already considered and rejected on the record. See *Snider*, 239 Mich App at 425 (defense counsel is not ineffective for failing to advocate for a meritless position). Similarly, defense counsel did not provide ineffective assistance by failing to object to the prosecutor's statements in closing argument and rebuttal. We have already concluded that the prosecutor made no improper statements during his arguments, so any objection by defense counsel would have been misplaced. Because any objections would have been futile, defense counsel's failure to object cannot be deemed ineffective assistance. See *id*.

Finally, defendant renews his request for a remand for an evidentiary hearing on the issues of ineffective assistance of counsel.[3] Because defendant has provided no affidavit or offer of proof that would justify such a remand, see MCR 7.211(C)(1)(a), we decline to order a remand.

D. SUFFICIENCY OF THE EVIDENCE

In a supplemental Standard 4 brief, defendant argues that the record contains insufficient evidence to support his convictions for CSC-III. We review de novo "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992) (quotation marks omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime." *Carines*, 460 Mich at 757 (quotation marks omitted). We "must view the evidence in the light most favorable to the prosecution[,]" *Wolfe*, 440 Mich at 515, and we also

---

[3] This Court earlier denied such a request. *People v Atkinson*, unpublished order of the Court of Appeals, entered May 5, 2022 (Docket No. 358713).

"must defer to the fact-finder by drawing all reasonable inferences and resolving all credibility contests in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 535 (2007).

"A person is guilty of [CSC-III] if the person engages in sexual penetration with another person and . . . [t]hat other person is at least 13 years of age and under 16 years of age." MCL 750.520d(1)(a). "The testimony of a victim need not be corroborated in prosecutions under" MCL 750.520d. MCL 750.520h. In describing the evidence supporting his convictions as insufficient, defendant faults the prosecution for not presenting DNA evidence or physical evidence. But MCL 750.520h makes clear that corroborating evidence is not required to bolster the testimony of a CSC victim. MK testified about two penile-oral penetrations, a digital-vaginal penetration, and a penile-vaginal penetration. Beyond that, the record contains additional evidence that corroborated MK's testimony. For instance, the prosecution introduced a text message exchange corroborating MK's testimony. Cell-phone records also supported her version of events. It was up to the jury to assess the credibility of MK's testimony and give her testimony the weight it deserved. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). The jury clearly determined that MK's testimony was credible, and this Court will not interfere with that determination. *Id*. When viewed in a light most favorable to the prosecution, a rational jury could find that the prosecution established beyond a reasonable doubt that defendant committed four separate sexual penetrations of MK when she was between 13 and 16 years of age.

## E.  SENTENCING ERRORS

The trial court imposed concurrent sentences of 10 to 15 years' imprisonment on defendant for his convictions on four counts of CSC-III. Those sentences reflected an upward departure from the prescribed sentencing guidelines range of 57 to 95 months. Defendant faults the trial court for assessing points on OV 4 and OV 12. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## 1.  OFFENSE VARIABLE 4

Defendant contends that the trial court erred when it assessed 10 points under OV 4, which provides for that score if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" See MCL 777.34(1)(a). Pursuant to MCL 777.34(2), it is also appropriate to assess 10 points for OV 4 "if the serious psychological injury may require professional treatment," and "the fact that treatment has not been sought is not conclusive." Statements found in a Presentence Investigation Report (PSIR) and statements from the victim can be used to support the scoring of sentencing variables. *People v Wellman*, 320 Mich App 603, 611-612; 910 NW2d 304 (2017). In this case, the record reveals that MK suffered serious psychological injury requiring professional treatment and that she actually sought such treatment. MK said at the sentencing hearing that the "15-year-old girl that [she] used to be . . . had no idea . . . how deep the trauma was going to affect

her." She asserted that defendant's "role in [her] life traumatized" her and continued to traumatize her. She stated that, because defendant had attended her same high school, she felt the impact of the abuse while she was at school and "was paranoid of [defendant]." MK further explained that "[w]orking through this took lots of therapy and lots of trial and error and it still does." She noted that she was scared to go out in public and was in a "constant state of paranoia and anxiousness because of [defendant]." MK said that when she left Michigan to go to college, she felt scared to leave her apartment and realized that the effects of the trauma were "everywhere." She believed that, for the rest of her life, she would have a "corrupted [view] on what love is and what a healthy relationship consists of." MK's statements were supported by a letter her mother provided for the PSIR that described the psychological impact defendant's actions had on MK and stated that MK had been in therapy since the encounter with defendant. On this record, the trial court correctly scored 10 points for OV 4.

## 2. OFFENSE VARIABLE 12

Defendant claims that the trial court erred in assessing 25 points under OV 12, which calls for that score if "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed[.]" MCL 777.42(1)(a). According to OV 12, a "felonious criminal act" is "contemporaneous" if "[t]he act occurred within 24 hours of the sentencing offense" and "[t]he act has not and will not result in a separate conviction." MCL 777.42(2). Defendant appears to contend that the scoring of OV 12 was incorrect because the other acts were part of the sentencing offense, and therefore not truly separate acts required to increase the score assessed for OV 12.

Because the four sexual penetrations charged by the prosecution all resulted in convictions, those sexual penetrations supporting the counts of conviction cannot serve as the basis for scoring 25 points under OV 12. See MCL 777.42(2)(a)(*ii*). Noting that restriction, the trial court relied upon three other acts to support its scoring of 25 points under OV 12: (1) defendant had MK touch his clothed genitals; (2) defendant had MK touch his unclothed genitals; and (3) defendant touched MK's breasts. The trial court observed that each of those acts could have been charged as fourth-degree criminal sexual conduct (CSC-IV), so those acts should be regarded as "contemporaneous felonious criminal acts involving crimes against a person" as contemplated by MCL 777.42(1)(a). In characterizing those acts as high-court misdemeanors in the form of CSC-IV offenses, the trial court scored 25 points under OV 12 because MCL 761.1(f) defines a "felony" as "a violation of a penal law of this state for which the offender, upon conviction, *may be punished by imprisonment for more than 1 year* or an offense expressly designated by law to be a felony." (Emphasis added.)

The trial court did not err in treating those three acts as "felonious." Although CSC-IV is defined as a misdemeanor under Michigan law, it is punishable by up to two years in prison. MCL 750.520e(2). Because CSC-IV "may be punished by imprisonment for more than 1 year," the trial court did not err in characterizing defendant's acts as "felonious" and relying on them in assessing 25 points under OV 12. See MCL 761.1(f). Defendant correctly notes that, in "scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). But that legal principle only assists a defendant when the contemporaneous felonious acts are "completely subsumed" by the sentencing offense, meaning that the other acts were "just other methods of classifying the sentencing offense." *Id*. at 726. Here, defendant's acts supporting the scoring of 25 points under OV 12 were separate crimes that defendant perpetrated beyond the

sexual penetrations that supported his four convictions for CSC-III. Thus, the trial court acted well within its authority in scoring OV 12 at 25 points.[4]

### 3. UPWARD DEPARTURE AND PROPORTIONALITY

Defendant argues that resentencing is necessary because the trial court failed to adequately justify its upward departure from the prescribed sentencing guidelines range. The trial court must articulate reasons supporting its decision to impose a sentence outside the guidelines range and the extent of its departure from that range. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). The trial court's justification " 'must be sufficient to allow for effective appellate review.' " *Id*. Indeed, a trial court's "sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear." *Id*. And "if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Id*. If a trial court "has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence[,]" we must remand the case to the trial court for resentencing. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

Here, the sentencing guidelines yielded a range for defendant's minimum sentences of 57 to 95 months' imprisonment. See MCL 777.63; MCL 777.16y (classifying CSC-III as a Class B felony). The trial court imposed a minimum sentence of 120 months and a maximum sentence of 180 months on each count of conviction, which resulted in a 25-month upward departure from the sentencing guidelines range. The trial court offered a long list of reasons for why it concluded that its chosen sentence was more appropriate than that suggested by the guidelines. The court noted that the sentencing guidelines are advisory and that the guidelines range "just isn't reasonable." It explained that defendant had "exceeded . . . the scale" for prior record variable 7, which allows for 20 points for "2 or more subsequent or concurrent convictions[.]" MCL 777.57(1)(a). The trial court further stated that defendant's total OV score was 100, which meant that he had exceeded the 75-point upper limit for OV scoring for the offenses. Additionally, the trial court concluded that the maximum of 10 points assessed for OV 4 was inadequate because MK and her mother had spoken about the extensive psychological damage MK suffered. Beyond that, the court concluded that the maximum score for OV 10, which involves predatory conduct, see MCL 777.40(1)(a), did not adequately account for how extensively defendant had groomed MK and how he had violated her trust. The trial court discussed how premeditated defendant's actions had been, and noted that he had brought marijuana and video games and driven a long distance to visit MK when her family was gone. The court also noted defendant's consciousness of guilt, as revealed by a text-message exchange in which defendant commented that he and MK should not speak about the incident so that nothing " 'bad' " would happen. In addition, the trial court expressed concern about certain aspects of the crimes, such as the fact that one sexual act had caused MK to vomit. The trial court

---

[4] Because the trial court correctly scored OVs 4 and 12, we need not address defendant's request for a remand for resentencing using an updated OV score. Defendant additionally asserts that he was sentenced on inaccurate information, but he does not identify what inaccurate information the trial court considered. To the extent that that argument is distinct from his argument that he should be resentenced under a new OV score, his argument is abandoned. See *Mitcham*, 355 Mich at 203.

noted that defendant testified that he was just trying to help MK, but the evidence established that he exploited her. Therefore, the trial court reasoned that the sentencing guidelines "simply [did] not capture the full scope of this transaction." For all of those reasons, the trial court decided that a sentence above that guidelines range was more proportionate.

The trial court properly explained its departure from the guidelines range. When reviewing an upward-departure sentence, the " 'test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]' " *Steanhouse*, 500 Mich at 475. In deciding whether a departure sentence is more proportionate than a sentence within the guidelines range, the trial court should consider (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). Relevant factors not considered by the guidelines include "the relationship between the victim and the aggressor, . . . the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019). In this case, the trial court explained in great detail why the sentences it chose for defendant were " 'more proportionate to the offense and the offender than a different sentence [within the guidelines] would have been.' " *Dixon-Bey*, 321 Mich App at 525. Our Supreme Court has explained that, when reviewing a sentence that departs from the guidelines range, "the proper approach is for the Court of Appeals to determine whether the trial court abused its discretion by violating the principle of proportionality." *Steanhouse*, 500 Mich at 461. We cannot say that the trial court abused its discretion in departing upward from the guidelines range, so we must affirm the sentences it imposed. See *People v Armstrong*, 247 Mich App 423, 424; 636 NW2d 785 (2001) (upholding "fourfold increase of the highest minimum sentence under the guidelines" in criminal-sexual-conduct case)

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates